## <u>AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT</u>

I, Special Agent Robert Jacobsen, being duly sworn, do depose and state that:

## <u>INTRODUCTION</u>

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I began working with ATF in November 2017. Before that date, I received fifteen weeks of criminal investigator training at the Federal Law Enforcement Training Center and seventeen weeks of training at the ATF National Academy in Glynco, Georgia. Before joining ATF, I worked for two and one-half years as a Deputy Sheriff with the Loudoun County Sheriff's Office in Loudoun County, Virginia. I began as a patrol officer, responding to calls for service and investigating violations of state criminal law, and later served as a member of the Special Operations Unit, a full-time special weapons and tactics ("SWAT") team.

2.      Since joining ATF, I have investigated federal firearms violations which have included participating in the controlled purchases of firearms, surveillance of firearms traffickers, interviews of suspects, drafting and execution of search warrants, and electronic surveillance. My participation in the investigation of federal firearms violations has included the analysis of firearms trace data and the content of cellular phones, email accounts, and other electronic data. In addition to my training and experience in the enforcement of federal firearms laws, I also have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants, executing arrests, and participating in court-authorized Title III wiretaps of cellular phones.  I have received extensive specialized training in the field of controlled substance identification, investigation, and enforcement.

3.      I now submit this affidavit in support of a criminal complaint and arrest warrant charging:

a.      Shakim GRANT ("GRANT") (DOB XX/XX/2001) with making false statements with respect to the acquisition of a firearm, in violation of 18 U.S.C. § 924(a)(1)(A);

b.      GRANT, Gustavo RODRIGUEZ ("RODRIGUEZ") (DOB: XX/XX/2002), and Cory DAIGLE ("DAIGLE") (DOB: XX/XX/1994) with conspiracy to make false statements with respect to the acquisition of a firearm, in violation of 18 U.S.C. § 371; and

c.      DAIGLE with possession of a machinegun, in violation of 18 U.S.C. § 922(o).

4.      The facts contained in this affidavit are based on my personal observations and review of records and physical evidence, my training and experience, and written or verbal information obtained from other law enforcement officers and witnesses.  This affidavit is being submitted for the limited purpose of establishing probable cause to secure criminal complaints and does not include every fact known to me concerning this investigation.

## RELEVANT LEGAL PROVISIONS

5.      I am aware that 18 U.S.C. § 922(o) provides, in relevant part, that it shall be unlawful for any person to transfer or possess a machinegun.

6.      I am aware that 18 U.S.C. § 924(a)(1)(A) makes it unlawful to "knowingly make any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter."  I am further aware that Title 18, Chapter 44 requires a licensee to keep records of "importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form," as prescribed by federal regulations.  18 U.S.C. § 923(g)(1)(A).

7.      I am further aware that the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 "Firearms Transaction Record" (referred to as "the 4473" or "Form 4473") is one such record that must be maintained by licensed federal firearms dealers for every firearm purchase or sale.  Form 4473 requires firearms purchasers to provide information regarding their identity and to state whether the purchaser is the actual buyer/transferee of the firearm.

8.      I am aware that 18 U.S.C. § 371 makes it unlawful "if two or more persons conspire … to commit any offense against the United States … and one or more of such persons do any act to effect the object of the conspiracy[.]"

## PROBABLE CAUSE

### Summary

9.      This investigation found that DAIGLE, RODRIGUEZ, and GRANT conspired to engage in a straw purchase of firearms on or about October 27, 2022, in which DAIGLE, a federally licensed firearms dealer, would provide GRANT firearms that were paid for by, and intended for, RODRIGUEZ, an individual not licensed to possess firearms.  As outlined in more detail below, in addition to the content and context of communications among the three that show the existence of a conspiracy to facilitate these straw purchases both before and after the purchase, both GRANT and DAIGLE made admissions to the violations.  Among other things, GRANT admitted that he acquired three Glock firearms for RODRIGUEZ from DAIGLE at Steelworks Defense Solutions. DAIGLE admitted in an interview that he knew that RODRIGUEZ was prohibited from purchasing firearms from a licensed dealer, received payment from RODRIGUEZ days prior to "selling" GRANT the firearms, and was aware that it was illegal for GRANT to purchase firearms on behalf of RODRIGUEZ.

### November 2022 Recovery of Firearms at the Hyde Park Address

10.      Based on my review of Boston Police Department (BPD) reports as well as through my conversations with BPD Detectives, I know that on the evening of November 6, 2022, BPD responded to a radio call for a person shot at an address in the Hyde Park neighborhood of Boston, MA. Officers found one individual at the scene suffering from a gunshot wound. Officers then received additional information from police dispatch that two other people were shot and headed to the hospital. Gustavo RODRIGUEZ ("RODRIGUEZ") (DOB: XX/XX/2002) was subsequently identified as one of those individuals.

11.      Officers ran the license plate of the vehicle in which RODRIGUEZ and the other individual arrived at Brigham and Women's Hospital and found that it was registered to a person

3

I know to be RODRIGUEZ's father at another address in Hyde Park (hereinafter, "the Hyde Park address"). Officers arrived at the Hyde Park address and observed blood spatter on the sidewalk. As a result, late in the evening on November 6, police froze the Hyde Park address pending the application for a search warrant. On November 7, 2022, BPD obtained a warrant authorizing a search of the location for firearms and other evidence related to the shooting under investigation. Police seized a Glock 23, .40 caliber pistol, bearing serial number VZM745, and a Glock 29, 10mm pistol, bearing serial number BWKC504, several empty gun boxes, and assorted ammunition and firearm magazines.

12.     According to BPD, during the execution of the search warrant at the Hyde Park address, Shakim GRANT ("GRANT") (DOB XX/XX/2001) arrived at the scene and advised officers that he was storing his firearms inside of the residence. Officers determined on scene, and I have confirmed by consulting records maintained by The Firearms Records Bureau, that GRANT has a Massachusetts firearms license, and had four firearms registered to him, to include the Glock 23, .40 caliber pistol, bearing serial number VZM745, the Glock 29, 10mm pistol, bearing serial number BWKC504, and a Glock 19 bearing serial number BYNF621. The Glock 23 and Glock 29 seized from the Hyde Park address are the ones registered to GRANT.

13.     I have obtained a copy of the Form 4473 related to the purchase of the Glock 29, 10mm pistol, bearing serial number BWKC504, and the Glock 19 bearing serial number BYNF621[1].  It was executed by GRANT and DAIGLE on October 27, 2022.  In response to Question 21(a) of the Form 4473, which asked if he was "the actual transferee/buyer of all of the firearm(s) listed on this form," GRANT falsely checked the box labeled "Yes." GRANT did so despite the bolded warning placed in the text of the same question, which reads: "Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the

---

[1] The Glock 23, .40 caliber pistol, bearing serial number VZM745 was sold by DAIGLE to GRANT utilizing the assistance of another FFL in Littleton, MA; the two FFLs sold the slide and the lower portion of the gun separately to GRANT, each selling him a piece. The Form 4473 for that transaction is in the custody of that other FFL.

firearm(s) to you." In addition, GRANT certified by signature, that his answer to Questions 21(a) (and other information on the form) was "true, correct, and complete" and that he understood "that answering 'yes' to question 21.a if I am not the actual transferee/buyer is a crime" and that he understood "that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

### GRANT's Interviews

14.     GRANT initially told law enforcement that he did not feel safe storing his firearms at his own residence, so he stored them at RODRIGUEZ's residence. GRANT agreed to speak with law enforcement further and was later interviewed at BPD. The interview was audio and video recorded, and GRANT was informed of and waived his *Miranda* rights. The interview is related below in substance rather than verbatim, unless noted otherwise.

15.     GRANT admitted during the interview that he had not been truthful with investigators at first when he provided them with the reason his firearms were in RODRIGUEZ's residence.

16.     GRANT explained that he told RODRIGUEZ that he was getting legally licensed to purchase and carry a firearm. According to GRANT, RODRIGUEZ responded that he knew firearms dealers and specifically referenced a FFL dealer known to him as "Cory."[2] GRANT then stated he had spoken directly with DAIGLE, the Federal Firearms Licensee (FFL) referenced by RODRIGUEZ. GRANT told police that he was buying the guns for RODRIGUEZ. RODRIGUEZ does not have a license to legally possess or carry firearms and is precluded from having one in Massachusetts based on his age. GRANT further informed law enforcement that he went through DAIGLE, and "it was already in play," and that he didn't even

---

[2] Based on the information I have learned during this investigation, including during an interview with DAIGLE, I believe that the FFL named "Cory" referenced by GRANT during this interview is Cory DAIGLE.  For ease of reference, I refer to him here as "DAIGLE" but note that GRANT referred to him by only his first name.

bring any money. GRANT stated that as far as he knew, RODRIGUEZ had already paid DAIGLE for the guns prior to GRANT meeting DAIGLE. GRANT clarified that he walked out of the store after meeting with DAIGLE and picking up firearms, without ever paying DAIGLE for them. GRANT explained that he kept the three Glock firearms in his possession for the day[3] after acquiring them, and then the following day at work, he provided all three to RODRIGUEZ. Again, GRANT confirmed for me that RODRIGUEZ used GRANT and his Massachusetts License to Carry (LTC), to purchase firearms from DAIGLE for RODRIGUEZ.

17.     GRANT confirmed that DAIGLE knew GRANT was coming to purchase the firearms previously chosen by RODRIGUEZ, was aware that RODRIGUEZ had already paid for them, and therefore GRANT would not be providing any money during the transaction.[4]

**Review of GRANT's Phone**

18.     Following GRANT's interview, I obtained and executed a federal search warrant (22-mj-1522-DLC) for GRANT's cell phone.  In reviewing data called for by the warrant, I located a series of communications between GRANT and RODRIGUEZ.

19.     One of those exchanges was from just prior to the execution of the warrant at the Hyde Park address, at approximately 10:20 pm on November 7, 2022. RODRIGUEZ initiated communication with GRANT via Snapchat messages that appear to show the two conspiring to coordinate a story to explain to BPD why officers would find the firearms inside of RODRIGUEZ's residence during the execution of the search warrant. The messages read as follows:

> RODRIGUEZ: Yo bro

---

[3] According to the Form 4473 maintained by DAIGLE, the straw purchase in question occurred on October 27, 2022, for the two Glocks. GRANT listed the date of sale as November 8, 2022, in the Massachusetts Gun Transaction Portal.  During his interview, GRANT admitted that he registered the firearms that date knowing that he would be interviewed with law enforcement on November 9, 2022.

[4] RODRIGUEZ was also interviewed.  He admitted that he had previously driven GRANT to a gun dealer in Littleton so that GRANT could purchase firearms for himself but otherwise denied involvement in GRANT's purchase of firearms from DAIGLE.

RODRIGUEZ: Are yu cool w this story?

RODRIGUEZ: They might be bluffing

RODRIGUEZ: But they talking bout getting the warrant signed in a hour

GRANT: Yeah we straight

RODRIGUEZ: Jus that yu stay with me you been crashing w me lately

GRANT: I gotchu

RODRIGUEZ: Soon as it happens lyk

GRANT: Bet

RODRIGUEZ: Yo on dawgs imma keep telling yu dis jus to get onda same page gang

RODRIGUEZ: So we can make this shit as Smoove as possible

RODRIGUEZ: My dukes already kno alldat I told her ya name yu my man's we went to school together

RODRIGUEZ: but when we go too unlock the door (if this shit happens)

RODRIGUEZ: Jus pull-up and be like yu jus peeped that this house had a search warrant

RODRIGUEZ: But these guns are legally mines, I legally bought these guns, they haven't been used illegally, I stay at this house frequently I stay with Gus

GRANT: Y'all gotta go unlock the door for them? Jus lmk I'll come grab them

RODRIGUEZ: Fax that's what I'm saying

RODRIGUEZ: It'll be easy nbs

RODRIGUEZ: But I'm jus tryna get story right so they dnt play

RODRIGUEZ: Scratch alldat, me and yu work at vpne, on weekdays yu kick it w me, and yu leave Friday afternoons, that's why ya legally licensed guns are in the crib

RODRIGUEZ: As far as hi cap mags say those is mines[5]

RODRIGUEZ: I paid for them in NH and we used them when shootin

GRANT: Range or outside?

RODRIGUEZ: Outside, we go to a outdoor range

GRANT: Sayless

RODRIGUEZ: Imma call yu before nbs

RODRIGUEZ: Go over it again

GRANT: We good if it happen we good

GRANT: Bet

RODRIGUEZ: Saysat

RODRIGUEZ: Saydat stay around

GRANT: Bet

GRANT: Even that tho they most likely not gonna let me take them since they searching

RODRIGUEZ: That's aight nbs

RODRIGUEZ: Eventually you'll get them

RODRIGUEZ: My point is that if yu were to show yu they legally yours. Yu legally bought them so we good

RODRIGUEZ: On deaddawgs if they do ballistics onnit they won't find shit cuz they never got blown

GRANT: Sayless

RODRIGUEZ: Yo try nd check the mass gun portal[6]

---

[5] Based on my training and experience I know that possession of a high-capacity magazine is illegal in the Commonwealth of Massachusetts, but not under federal law. I believe this conversation shows that RODRIGUEZ was willing to take responsibility for a state crime (*i.e.*, possession of an unloaded magazine) in furtherance of their attempted cover-up of the straw purchase of the other firearms in violation of federal law.

[6] The Massachusetts Gun Transaction Portal website states, "Massachusetts General Law c. 140, §§128A and 128B, requires all individuals who sell, transfer, inherit, or lose a firearm to report

RODRIGUEZ: To register them shits so it looks better

GRANT: Bet

20.     Data from the phone shows that at about 12:20 am on the morning of November 8, 2022, RODRIGUEZ sent a message to GRANT with the Hyde Park address.[7]

21.     Data from the phone shows that at 12:23 am on November 8, 2022, GRANT received a call from RODRIGUEZ, and they spoke for 15 minutes and 23 seconds. At 12:42 am, GRANT received a call from DAIGLE at the phone number xxx-xxx-1095,[8] which lasted for 10 minutes and 42 seconds.  GRANT then received two more incoming calls from RODRIGUEZ, placed an outgoing call to RODRIGUEZ, and then made an outgoing call to DAIGLE at 1:36 am, which lasted for 14 minutes and 9 seconds. There were two more calls between GRANT and RODRIGUEZ before GRANT again called DAIGLE at 2:18 am, which call lasted for 16 minutes and 24 seconds. Records of all of the aforementioned phone calls between DAIGLE, GRANT, and RODRIGUEZ (with the exception of the final call that GRANT made to DAIGLE) were shown to have been deleted from GRANT's phone.

22.     Data from the phone shows text communications between RODRIGUEZ and GRANT on several occasions in which RODRIGUEZ would ask GRANT to also purchase

---

the sale, transfer, inheritance, or loss of the firearms to the Department of Criminal Justice Information Services Firearms Records Bureau (FRB)."

[7] According to a BPD report, GRANT arrived at the residence and claimed that the guns inside the home belonged to him at approximately the same time, between 12:15-12:30 am, while BPD was executing the search warrant.

[8] The number is subscribed to by a person with the same last name as DAIGLE, and is the number listed on DAIGLE's FFL paperwork. In addition, it was saved in GRANT's phone as "Cory [gun emoji]" and, as outlined below, DAIGLE admitted to speaking with GRANT and RODRIGUEZ that night.  Furthermore, DAIGLE's phone, which was seized and preliminarily searched pursuant to warrant, is assigned that number.  As such, I refer to contacts with that phone as being with DAIGLE himself.

ammunition for him. GRANT provided RODRIGUEZ his CashApp account information for payment.[9]

23.     On October 27, 2022, RODRIGUEZ messaged GRANT that he was on the way to pick GRANT up at work. Data from the phone shows that at approximately 6:30 pm GRANT activated Apple Maps in his phone, entering "Littleton, MA" as the location.[10] At approximately 7:00 pm RODRIGUEZ messaged GRANT that he was waiting for GRANT at work to pick him up. RODRIGUEZ then said "Imma send u cash appp soon as we inda V."[11] At approximately the same time, 7:00 pm, GRANT entered an address in Littleton, MA, which I know to be the address of a Federal Firearms Licensee, Steelworks Defense Solutions, the firearms business operated by DAIGLE, into the Apple Maps application.

**January 2023 Execution of Search Warrants at DAIGLE's Residence and Place of Business**

24.     As referenced above, during the investigation, law enforcement determined that "Cory" is Cory DAIGLE (YOB 1994).  ATF records show that DAIGLE's Massachusetts license to carry a firearm and his federal license to deal in firearms are registered to his place of business, Steelworks Defense Solutions in Littleton, Massachusetts.  According to ATF records, DAIGLE's FFL application was approved in April 2021.  Massachusetts Registry of Motor Vehicles records show that DAIGLE's personal residence is in Revere, Massachusetts.

25.     Based in part on the foregoing information, I sought and obtained federal search warrants for DAIGLE's person, phone, Revere residence, and Littleton place of business (23-mj-4023-DHH through 23-mj-4026-DHH).  On January 5, 2023, I participated in the execution of

---

[9] CashApp is a mobile payment service that allows users to transfer money to one another using a mobile phone app.  I obtained CashApp subscriber and transaction records for RODRIGUEZ's account, which is registered to RODRIGUEZ at the Hyde Park address. The subscriber and transaction data from CashApp corroborated those text messages by showing matching payments on corresponding dates to the transactions referenced in the text messages.

[10] It is unclear from my review of the forensically obtained phone data whether GRANT just searched for Littleton MA on his Apple Maps or if he searched and activated the GPS.

[11] RODRIGUEZ's CashApp records show that RODRIGUEZ paid $80 at approximately 7:00 pm on that date to a user that law enforcement has determined is GRANT.

the warrant at DAIGLE's residence in Revere, MA. DAIGLE was encountered outside and remained there while agents cleared the inside of the residence. While waiting outside, DAIGLE made an unprovoked and spontaneous comment that he believed ATF's presence at his house was connected to RODRIGUEZ, who he said had called him late at night months ago and told DAIGLE that he had been shot in Boston. DAIGLE continued, saying that he had been waiting for the ATF to submit firearm trace requests and never received one.[12]

26.     During the execution of the search warrant, DAIGLE agreed to speak with agents and was interviewed in a bedroom within the residence.  DAIGLE was advised of and waived his *Miranda* rights before answering substantive questions. The interview, including the Miranda waiver, was audio recorded; the following information is summary in nature and not recounted verbatim except where specifically noted otherwise.

27.     During the interview, I showed DAIGLE photos of firearms that RODRIGUEZ had sent GRANT via text message on or about August 23, 2022, which was prior to GRANT's acquisition of two firearms from DAIGLE at his business in Littleton, MA.

28.     DAIGLE said that on October 27, 2022, GRANT bought a Glock 23, Glock 19, and a Glock 21. DAIGLE advised that he got a Glock 19X kit from another dealer and disassembled the Glock to sell the frame and slide separately; he did the same with another dealer for the Glock 23.[13] The Glock 21 was from DAIGLE's inventory. DAIGLE said he completed the Form 4473 and background check for the Glock 21 that was in his inventory and the other dealers completed the Form 4473 and background checks for the other firearms. DAIGLE advised that because GRANT was "building frames," as in GRANT purchased the

---

[12] Based on my training and experience, I know that when a firearm is recovered by law enforcement, firearm information including make, model, caliber, and serial number is submitted to the ATF Firearms Tracing Center. ATF then identifies the original purchaser of the firearm by contacting the manufacturer and/or firearm dealers. In this case, the trace process was suspended to avoid jeopardizing the investigation.

[13] When someone purchases the frame and slide separately it avoids the purchase qualifying as a "firearm" until they are combined, thus avoiding the definition of firearm under Massachusetts Law and the legal obligations attendant to a firearm purchase.

Glock firearms as separate frames and slides and not as completed functional firearms at the time, GRANT was responsible for registering his own firearms through the Massachusetts Gun Portal. DAIGLE admitted that he knew that RODRIGUEZ could not legally purchase firearms. In the interview DAIGLE said, "I know I can't sell a gun to Gus and I know Gus technically cannot, will not, buy a gun."[14]

29.     DAIGLE said that RODRIGUEZ, not GRANT, paid DAIGLE for the three firearms via Venmo[15] a day or two prior to GRANT meeting with DAIGLE on October 27, 2022, to acquire the firearms and fill out the 4473 forms. DAIGLE's response to questions about why he would engage in the transaction with RODRIGUEZ and GRANT knowing it was improper was, "that's a straw purchase" but that he needed the money. He also said that RODRIGUEZ told DAIGLE that he would have access to the guns that he paid for, and that GRANT was acquiring. DAIGLE admitted, "At the end of that day I needed the fucking cash to pay my distributor, I sold three guns in one night." DAIGLE said, "The point is I'm a gun dealer, I did a straw purchase. I fucked up."

30.     DAIGLE explained that he makes transfers in the evening at his gun store, Steelworks Defense Solutions, in Littleton, MA.  DAIGLE explained that he buys firearms from distributors and sells them through his business.  DAIGLE said that his personal guns were mostly in the safe located in the living room of his residence. He advised that he kept some of his business inventory on his sofa in the living room.[16]

31.     DAIGLE advised that last year, in 2022, "I did quite a few" personal sales and/or transfers. He detailed, "maybe seven in total." He further explained, "I needed, I was using that

---

[14] I believe "Gus" to refer to RODRIGUEZ.  DAIGLE also referred to RODRIGUEZ as a "young kid."  I am aware that RODRIGUEZ is presently 20 years old.

[15] Venmo is a mobile payment service that allows registered users to send and request payment from each other.

[16] During the execution of the search warrant at DAIGLE's residence, law enforcement observed and seized 95 firearms, some of which were registered to the FFL and some of which were registered to DAIGLE personally.

cash to fund my some of my inventory, because some of my inventory didn't sell and I had to pay my distributors." DAIGLE said that he did not run any of his personal transfers through his business book with the exception of maybe one because it was "easier at the time," but most all were done through the Massachusetts Gun Portal.[17] DAIGLE claimed that he did all of his FFL sales and transfers at his place of business in Littleton as required by FFLs but advised that he had 4473 forms inside of the residence.  In searching the business, law enforcement observed that DAIGLE had no blank 4473 Forms at his business and most of his inventory, almost all of his tools, and most paperwork appeared to be kept and maintained in his residence rather than at the Littleton business.

32.     During the search of the residence, agents located firearms in numerous safes, as well as on furniture, in bedrooms, in drawers, and in open areas throughout the residence. The firearms were found scattered throughout the house and seemingly in no order.

33.     Based on the assessment of ATF personnel with training and experience in classifying weapons prohibited by the National Firearms Act (NFA), I believe that several of the firearms located and seized were in violation of NFA, including the following, none of which were documented in the National Firearms Registration and Transfer Record (NFRTR) as having been registered to DAIGLE:

    a.    Machine gun barrel and receiver with S/N: 2036911;

    b.    Machine gun bolt with no serial number;

    c.    PTR Industries, model PTR91, .308 caliber, short-barrel rifle with S/N: DK04648, with a machine gun conversion device S/N: ESHK5101;

    d.    Short-barrel rifle with two serial numbers and a case: 22052 and 58280;

    e.    Machine gun conversion device with no serial number; and

---

[17] A personal sale of a firearm generally does not require the execution of ATF Form 4473 or a criminal background check of the buyer.

      f.      McKay Enterprises RMUZ-09, 9mm para (UZI) with S/N: RMU03255.[18]

### Review of DAIGLE's Phone

34.     On or about January 6, 2023, I obtained and executed a federal search warrant (22-mj-4025-DHH) for DAIGLE's cell phone, and I reviewed the contents and data of DAIGLE's cell phone pursuant to the warrant. Based on my review of the phone's data, I understand that all communications, to include call logs and the content of any text communications, between GRANT and RODRIGUEZ had been deleted, though their phone numbers were still saved as contacts in the phone. Based on my investigation of this matter, including my review of toll records and the contents of GRANT's cell phone, I know that DAIGLE communicated with both RODRIGUEZ and GRANT on numerous occasions.

35.     The data on DAIGLE's phone included transaction history for DAIGLE's Venmo account, which showed that RODRIGUEZ had paid DAIGLE money via Venmo[19] on nine occasions, to include four days prior to the straw purchase on October 27, 2022, of the three firearms recovered from the Hyde Park address. The payments from RODRIGUEZ to DAIGLE include:

        6/11/2021     $80 for "Ammo"

        12/30/2021     $60 for "Build."

        7/24/2022     $45 for "Road trip"

        8/26/2022     $200 for "Berries."

        9/11/2022     $140 for "Berrys"

        9/17/2022     $145 for "Berries"

        10/17/2022     $45 for "Berries"

        10/23/2022     $400 for "Berrys"

---

[18] Based on my training and experience, I know that all of these items except for the short barrel rifle described in subparagraph (d) are considered machineguns. During his interview, DAIGLE stated that he had just built the UZI and was planning to register it after test firing it.

[19] RODRIGUEZ is listed as "Gustavo Rodriguez" in the transactions.

11/6/2022        $45 for "Berries"[20]

## **CONCLUSION**

36.        Based on the foregoing, I respectfully submit there is probable cause to believe:

a.        that on or about October 27, 2022, Shakim GRANT knowingly made a false statement and representation with respect to information required by the provisions of Chapter 44 of Title 18 of the United States Code to be kept in the records of Steelworks Defense Solutions, a firearms dealer licensed under such Chapter, by stating in a Form 4473 that GRANT was the actual purchaser of the subject firearms, to wit:  a Glock 29, 10mm pistol, bearing serial number BWKC504, and a Glock 19 bearing serial number BYNF621, whereas in truth and in fact, GRANT purchased the firearms on behalf of RODRIGUEZ, in violation of 18 U.S.C. § 924(a)(1)(A).

b.        from on or about August 1, 2022, through on or about November 9, 2022, in the District of Massachusetts, RODRIGUEZ, GRANT, and DAIGLE knowingly conspired to violate the provisions of 18 U.S.C. § 924(a)(1)(A), that is, to knowingly make a false statement and representation with respect to information required by the provisions of Chapter 44 of Title 18 of the United States Code; and

(this section intentionally left blank)

---

[20] It is my belief based on training and experience and my review of the evidence in this case that "Berries" and/or "Berrys" was being used here to mean ammunition.

c.      that on or about January 5, 2023, in the District of Massachusetts, DAIGLE unlawfully possessed a machinegun, to wit: machine gun barrel and receiver with S/N: 2036911, machine gun bolt with no serial number, PTR Industries, model PTR91, .308 caliber, short-barrel rifle with S/N: DK04648, with a machine gun conversion device S/N: ESHK5101, machine gun conversion device with no serial number, and McKay Enterprises RMUZ-09, 9mm para (UZI) with S/N: RMU03255, in violation of 18 U.S.C. § 922(o).

Sworn to under the pains and penalties of perjury.



Special Agent Robert Jacobsen

Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me via telephone in accordance with Fed. R. Crim. P. 4.1 this 17th day of January, 2023.

HON. DONALD L. CABELL

U.S. MAGISTRATE JUDGE